BARUTHA, Respondent, vs. CHICAGO, NORTH SHORE & MILWAUKEE RAILROAD COMPANY and another, Appellants.

*September 11—October 14, 1947.*

For the appellants there was a brief by *Edgar L. Wood* and *John H. McQuaid,* both of Milwaukee, and oral argument by *Mr. McQuaid.*

For the respondent there was a brief by *Wolfe, O'Leary & Kenney* of Milwaukee, and oral argument by *Zelotus F. O'Leary.*

FRITZ, J. The collision in question occurred on South Fifth street (in Milwaukee) about one hundred eighty to two hundred feet north of the north curbline of Rogers street. Plaintiff, in driving his automobile westward on Rogers street, stopped at the east crosswalk at the intersection of that street and South Fifth street, and then, after looking north and south for approaching traffic, turned northward in the intersection with his car in low gear, and continued at an increased speed northward on the car track for northbound traffic. There were conflicts in the evidence on the trial as to speed and lookout kept by the plaintiff, and likewise the motorman's speed and lookout, as they operated their respective vehicles while approaching and entering the intersection and then traveling northward until the collision occurred. But the evidence admitted of the jury's finding in the special verdict that neither of them was negligent in those respects. However, as to their management and control in operating their respective vehicles the jury found that the motorman, and likewise the plaintiff, was causally negligent; but that on the issue of comparative negligence, seventy-five per cent of the total causal negligence was attributable to the motorman and twenty-five per cent thereof to the plaintiff. Consequently the judgment entered was for plaintiff's recovery of seventy-five per cent of his damages assessed by the jury.

On the issue raised on defendants' appeal in relation to the jury's findings as to the causal negligence on the part of the operator of each of the vehicles involved, in respect to his control and management thereof, and their comparative negligence in these respects, plaintiff relied on testimony under which the jury could find the following. Before entering and turning northward in the intersection, plaintiff had stopped on the east crosswalk, and on looking north and south he saw defendants' approaching train three hundred to three hundred fifty feet south of the crossing. When he had traveled thirty to forty feet on the track for northbound traffic, he could see through his rear-view mirror that the train was one hundred fifty feet behind him, and thereupon he increased his speed. When about sixty feet further north and looking again to see how far the train was, plaintiff saw that between automobiles parked in the street all along the east curb from twenty feet north of the intersection, there was, about one hundred eighty to two hundred feet north of the intersection, an open space of ninety feet along the curb, and that beyond this open space there were also parked automobiles. Thereupon plaintiff stepped up his accelerator and looked again to see whether he had time to get into that space, and tried to stay far enough from the train so he could make that opening; but as he was pulling into that space, he looked again toward the train and saw it was right behind him. He did not get off the streetcar tracks sooner because there was no way he could go between the parked automobiles and the first rail, and he could not cross over to the track for northbound cars because of southbound traffic on that track. He did not apply his brakes at any time after he got on the streetcar track or when he attempted to turn into the ninety feet open space. He just tried to go in that space, and was just about clear off the rail when the train hit him and threw him up on the curb. When struck his automobile was in the air until it landed on the curb and stopped

almost eighty-six feet from where it was hit. The train came
to a stop with its first car a little way ahead of plaintiff's auto-
mobile. It was two hundred twenty feet from the crossing
to where the train hit plaintiff's automobile and he never took
his foot off the accelerator until he had been hit. Although he
was unable, because of the parked automobiles, to turn east-
ward sooner to get off the track, and while, to avoid being
struck, he at no time decreased his speed, the train kept gaining
on him continually from the time he came onto the track until
his automobile was struck. Police Officers Miszewski and
Treu testified that the motorman stated to them,—

"The automobile turned right onto South Fifth street from
West Rogers street. I was gaining a little on the car, when
all of a sudden it looked as though he was going to stop and
pull in to park at the curb. Previous to that I blew the whistle
for the car. I then could not stop the train and struck his car
in the rear end causing his car to keep on going to the curb and
strike a pedestrian who was between the sidewalk and the
curb."

Defendants, on the other hand, relied principally upon testi-
mony by the motorman and conductor on the train to the effect
that after plaintiff got his automobile straightened out on
South Fifth street he was gaining speed on the train in spite
of the fact that he made the turn on Rogers street; but that
he seemed to reduce his speed or touch the brake, when the
train was fifty feet behind the automobile; and that when plain-
tiff's speed was so reduced, the motorman threw his train into
emergency, reducing its speed from fifteen to eight miles per
hour, and stopping it in half a car length. However, in so far
as this testimony by the motorman and conductor and by
defendants' other witnesses was in conflict with that of plain-
tiff and the police officers, it was clearly within the jury's
province to consider the testimony of plaintiff and his witnesses
more credible and believe their testimony instead of that of

defendants' witnesses.   Consequently the jury's findings that the motorman was causally negligent in his management and control of the train, and that such negligence was seventy-five per cent of the total negligence, could rightly be sustained by the trial court, and judgment entered thereon accordingly.

*By the Court.*—Judgment affirmed.